IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA ELDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-59 |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

<u>CONTI</u>, District Judge

On January 29, 2007, plaintiff Christina Elder ("plaintiff") filed her complaint in this case against Michael J. Astrue, the Commissioner of Social Security ("Commissioner" or "defendant"). (Docket No. 3.) This case was referred to a magistrate judge for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. §§ 636(b)(1)(A) and (B), and Rules 72.1.3 and 72.1.4 of the Local Rules of Court. Cross-motions for summary judgment were filed by plaintiff and defendant. (Docket Nos. 8, 10.)

The magistrate judge's report and recommendation ("R&R") was filed on March 10, 2008. (Docket No. 15.) The R&R recommended that plaintiff's motion for summary judgment be denied, that defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed. On March 17, 2008, plaintiff filed objections to the R&R. (Docket No. 16.) Defendant did not respond to plaintiff's objections but during oral argument held on

1

April 23, 2008, supported the rationale and recommendations made in the R&R. (Docket No. 25.)

Plaintiff asserts that the R&R should be rejected or, at the very least, remanded for reconsideration because the decision of the Commissioner is not supported by substantial evidence. Plaintiff's objections are based on two arguments: (1) the R&R improperly disregarded two valid verbal IQ scores below the requisite score of 70 which satisfied the first requirement set forth in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C (the "12.05C Listing"); and (2) the R&R imposed a mental retardation requirement by default, which the 12.05C Listing does not require.

The court declines to adopt the R&R and concludes that the decision of the Commissioner must be reversed because it is not supported by substantial evidence. The evidence of record shows that plaintiff meets the requirements of the 12.05C Listing. Summary judgment will be granted in favor of plaintiff and the case will be remanded for the calculation and award of benefits.

*Procedural History*

On February 8, 1996, Rosanna Elder, plaintiff's mother, filed an application on behalf of plaintiff for Childhood Supplemental Security Income ("CSSI") benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. (R. at 27.) The social security agency determined that plaintiff, who was born on April 16, 1981, qualified for CSSI, stating that her disability commenced on January 1, 1996. (R. at 27, 49.)

On April 16, 1999, when plaintiff turned eighteen years old, a Continuing Disability Review was performed to determine if she was still disabled. (R. at 27.) The agency determined

that plaintiff's disability ceased on January 2, 2001. (R. at 27.) Plaintiff appealed the agency's determination and an administrative law judge held a hearing on March 19, 2002. (R. at 27.) The administrative law judge in a decision dated August 9, 2002 found plaintiff not disabled. In reaching that conclusion he considered whether plaintiff met the requirements of the 12.05C Listing. He found that plaintiff had:

> some IQ scores . . . clearly in the 60-70 range, 12.05, but the only other area of concern is a social impairment. According to Listing 12.05 of Appendix 1 of Subpart P of Part 404, in order to be found disabled pursuant to this listing an individual <u>must also have another physical or other mental impairment</u> imposing an additional and significant work related limitation of functioning. <u>The undersigned finds that the claimant does not have this additional limitation and consequently does not meet the listing</u>.

(R. at 28)(emphasis added.)

On April 25, 2003 (protective filing date), plaintiff filed an application for supplemental security income ("SSI") benefits. (R. at 17, 50-66.) She claimed a learning disability that began on January 1, 1996. (R. at 49-50.) On August 4, 2003, the agency denied her claim because plaintiff's "condition [was] not severe enough to keep [her] from working." (R. at 35.) On September 23, 2003, plaintiff requested a hearing before an administrative law judge. (R. at 39.)

On June 29, 2004, the administrative law judge (the "ALJ") – a different administrative law judge than the one who in 2002 found plaintiff not disabled – conducted a hearing during which plaintiff and a vocational expert both testified. (R. at 154-75.) In a decision dated December 17, 2004, the ALJ held, among other things, that the findings of the administrative law judge in 2002 were "final and binding," plaintiff had "not engaged in substantial gainful activity since she applied for supplemental security income on April 25, 2003 (protective filing date)",

3

and that "[t]he medical evidence establishes that [plaintiff] has borderline intellectual functioning and a depressive disorder [and] [t]hese impairments are severe. . . ." (R. at 17.) The ALJ found plaintiff did not meet the 12.05C Listing requirements, noting that "the numeric indicators of IQ reported in the record cannot be viewed in a vacuum." (R. at 14, 18.) Specifically, the ALJ found that plaintiff did "not have a valid verbal, performance, or full scale IQ of 70 or less, as contemplated by Appendix I Listing 12.05," (R. at 14) and that the 12.05C Listing was not applicable because "the necessary IQ threshold is not satisfied. . . ." (R. at 15.) Plaintiff requested review of the ALJ's decision, but the Appeals Council denied her request. (R. at 4-7.) As a result, the ALJ's decision became the final decision of the Commissioner in plaintiff's case. (R. at 4.) After all administrative remedies were exhausted, plaintiff commenced the instant case seeking judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c).

Both parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The R&R recommended that this court deny plaintiff's summary judgment motion and grant the Commissioner's summary judgment motion. Plaintiff filed objections to the R&R. Oral argument was heard by this court on April 23, 2008.

*Supplemental Facts and Procedural History*

The R&R contains a detailed review of plaintiff's medical history beginning with her October 2000 psychological evaluation. The court adopts the factual background provided in the R&R, but will briefly supplement that background.

Plaintiff was found to be disabled in her childhood. She qualified for CSSI in 1996 "due to mental retardation and a conduct disorder." (R. at 27.) Plaintiff could not sustain employment because of her oppositional behavior and mood swings. (R. at 122.) In 1999, plaintiff took an

4

IQ test and her scores were as follows: "a verbal IQ of 66, a performance IQ of 83, and a full scale IQ of 71." (R. at 28 (emphasis added).) During high school, plaintiff was in a learning support program, i.e. special education classes. (R. at 28.)

Plaintiff was evaluated on June 6, 2001 by Dr. Frank Mrus, Ed.D., (R. at 148) and testing showed she had IQ scores as follows: "a verbal IQ of 68, a performance IQ of 79, and a full scale IQ of 71"(R. at 29, 149 (emphasis added)). While Dr. Mrus noted that plaintiff had a severe cold which may have affected her test results, he also remarked that her familiarity with the testing process may have "influenced the test results in a mild inflationary manner." (R. at 150.) The doctor characterized plaintiff's IQ scores as "reasonably accurate." (R. at 149.) His final diagnosis was borderline intellectual functioning ("BIF"), but he suggested the possibility of mild mental retardation. (R. at 150.)

On June 12, 2003, Dr. Leon Kalson evaluated plaintiff. (R. at 122.) Plaintiff's IQ scores at that time were as follows: "verbal IQ of 69, performance IQ of 81, and full scale IQ of 73." (R. at 123 (emphasis added)). Dr. Kalson diagnosed plaintiff with BIF and characterized the IQ scores as "a valid and reliable measure of her characteristic pattern and level of intellectual functioning, consistent with her history of special education . . . ." (R. at 123 (emphasis added).)

On July 29, 2003, Dr. Dalton, a state agency psychologist, checked a box on a Psychiatric Review Technique form indicating plaintiff did not meet the requirements of the 12.05 Listing. (R. at 134.) He opined: "The medical evidence establishes a medically determinable impairment of Borderline Intellectual Functioning (69, 81, 73 [the 2003 IQ scores])." (R. at 146.)

*Legal Standard*

A claimant seeking benefits under the Act may seek judicial review of the Commissioner's denial of the claimant's benefits. 42 U.S.C. § 405(g). When reviewing an administrative law judge's determination subsequently adopted by the Commissioner, this court will affirm the Commissioner's findings if the findings are supported by substantial evidence. Id.; Podedworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 (1971)). This deferential standard has been referred to as "less than a preponderance of the evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Under this standard, a court is not permitted to weigh the evidence or substitute its own conclusion for that of the fact-finder. Id.; Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry).

A district court's review of a magistrate judge's report and recommendation relating to a summary judgment motion is de novo. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

*Discussion*

Under Title XVI of the Act, a disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Likewise, a person is unable to engage in substantial

gainful activity when "his physical impairment . . . or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

To make a disability determination under the Act, a five-step sequential evaluation must be applied. Burns, 312 F.3d at 118-19 (citing 20 C.F.R. § 416.920). At any step in the process, should the plaintiff fail to meet the requirements of that step, the administrative law judge may find that the plaintiff is not disabled. The five steps are: (1) whether the plaintiff is currently engaged in substantial gainful activity; (2) if not, whether the plaintiff has a severe impairment; (3) if so, whether the plaintiff's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the plaintiff's impairment prevents him or her from performing his or her past relevant work; and (5) if so, whether the plaintiff can perform any other work which exists in the national economy in light of his or her age, education, work experience and residual functional capacity. Id. at 119; 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden to prove the first four steps; the Commissioner has the burden to prove step five. Burns, 312 F.3d at 119.

Here, the ALJ found plaintiff satisfied step one and step two of the sequential evaluation, but did not meet the burden to prove she satisfied step three. Plaintiff argues that the ALJ erred in step three of the evaluation which requires the ALJ to determine whether plaintiff's severe impairment meets or equals criteria set forth in a listing. The listing in issue here is the 12.05C Listing, which provides in relevant part:

> 12:05 Mental retardation: Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, §12.05C.

Plaintiff argues that the evidence of record demonstrates that she meets the requirements of the 12.05 C Listing. If she meets the requirements of that listing, she will be found disabled. 20 C.F.R. § 416.920(d). There are three requirements set forth in the 12.05C Listing: a plaintiff "must i) have a valid verbal, performance **or** a full scale IQ of 60 though 70, ii) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) show that the mental retardation was initially manifested during the developmental period (before age 22)." Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003) (emphasis added). In this case plaintiff presented evidence that she had taken two IQ tests after the age of eighteen, which both showed she had a verbal IQ score below 70. To meet the second requirement plaintiff points to the ALJ's finding that her depressive disorder was a severe impairment. (R. at 15, 17.) With respect to the third requirement, plaintiff refers to the record which reflects that plaintiff, prior to the age of eighteen, qualified for CSSI due to mental retardation and a conduct disorder. Defendant argues that the ALJ's decision should be affirmed because it is supported by substantial evidence. Each requirement of the 12.05C Listing will be

discussed.

 1. **First Requirement: Valid IQ Score of 60 through 70**

Plaintiff argues that the ALJ improperly rejected two valid IQ scores solely because she was ultimately diagnosed as BIF, which places her in the 71-84 IQ range. The court agrees with plaintiff.

On June 6, 2001, Dr. Mrus evaluated plaintiff. (R. at 148.) Plaintiff's IQ scores were as follows: verbal of 68, performance of 79, and full scale of 79. (R. at 149.) While Dr. Mrus noted that plaintiff had a severe cold which may have affected her test results, he also remarked that her familiarity with the testing process may have "influenced the test results in a mild inflationary manner." (R. at 150.) The doctor ultimately characterized plaintiff's IQ scores as "reasonably accurate." (R. at 149.) His final diagnosis was BIF, but he suggested the possibility of mild mental retardation. (R. at 150).

On June 12, 2003, Dr. Kalson evaluated plaintiff. (R. at 122.). Her IQ scores were as follows: verbal of 69, performance of 81, and full scale of 73. (R. at 123). Dr. Kalson diagnosed plaintiff with BIF and characterized the IQ scores as "a valid and reliable measure of her characteristic pattern and level of intellectual functioning, consistent with her history of special education. . . ." (R. at 123).

Even though plaintiff's verbal IQ scores of 68 and 69 on the two tests were below 70 and her IQ test in 1999 showed she had a verbal IQ score of 66, the ALJ rejected the scores. (R. at 13-14.) Defendant argues that there is an inconsistency between diagnosing plaintiff with BIF and crediting her below 70 verbal IQ score. Plaintiff's diagnosis, however, is not the issue. The 12.05C Listing does not contemplate a diagnosis as one of the requirements. The 12.05C Listing

9

clearly states that the IQ requirement is met when the plaintiff has <u>any valid</u> IQ score below 70. 20 C.F.R. pt. 404, subpt. P, app. 1, §12.05C; <u>see</u> <u>Halsted v. Shalala</u>, 862 F.Supp. 86, 90 (W.D. Pa. 1994) (recognized that the lowest IQ score must be used in applying the 12.05C Listing); <u>see also</u> <u>Cockerham v. Sullivan</u>, 895 F.2d 492, 495 n.5 (8th Cir. 1990); <u>Bendt v. Chater</u>, 940 F.Supp. 1427, 1430 (S.D. Iowa, 1996).[1] The ALJ determined that plaintiff did not meet the 12.05C Listing because plaintiff did "not function as a retarded person." (R. at 14.) He concluded "that the numeric indicators of IQ reported in the record cannot be view in a vacuum." (<u>Id.</u>) The ALJ found that " the claimant is not mentally retarded, the necessary IQ threshold is not satisfied and [the 12.05C Listing] is inapplicable." (R. at 15.) Contrary to the ALJ's legal analysis in this case, the appropriate issue should have been whether plaintiff's IQ test scores below 70 were valid and not whether she functions as a retarded person. An administrative law judge may reject an IQ test score, but there must be substantial evidence of record to support a finding that the score was invalid. <u>Markle</u>, 324 F.3d at 187.

The United States Court of Appeals for the Third Circuit dealt with an administrative law judge's right to reject IQ scores for purposes of determining whether the requirements of the 12.05C Listing were met in <u>Markle v. Barnhart</u>, 324 F.3d 182 (3d Cir. 2003), and in <u>Morales v. Apfel</u>, 225 F.3d 310 (3d Cir. 2000). In <u>Markle</u>, the plaintiff was a forty-eight-year old man with a verbal IQ score of 73, a performance IQ score of 72, and a full scale IQ score of 70. <u>Markle</u>,

---

[1] As plaintiff points out, courts have rejected applying the margin of error in IQ test scores to determine whether the requirements of the 12.05C Listing are met. <u>Colavito v. Apfel</u>, 75 F.Supp.2d 385, 402-03 (E.D. Pa. 1999); <u>Bendt</u>, 940 F.Supp. at 1431. In <u>Colavito</u> and <u>Bendt</u>, the plaintiffs attempted to use a ±5 margin of error to drop IQ scores higher than 70 to below the qualifying range. <u>Id.</u> The courts rejected those attempts. Likewise, when a valid score is below 70, a margin of error should not be applied to inflate a score to the detriment of a plaintiff. Cf. <u>Williams v. Apfel</u>, No. 99-039, 2000 WL 376390, *12 (D. Del. Mar. 30, 2000) ("margin of error associated with IQ tests should not be taken into account").

324 F.3d at 183. The plaintiff had dropped out of high school after attending special education classes, but later obtained his general equivalency diploma. Id. He could read, write and do basic math, lived alone and performed basic daily activities, such as handling bills, visiting friends and relatives, using an ATM, shopping and taking care of an apartment. Id. The plaintiff had not held a job in fifteen years prior to his SSI application. Id. The plaintiff was evaluated by a licensed psychologist, who, among other things:

> found that despite being cognitively challenged, [the plaintiff] had a good ability to use judgment, function independently, follow work rules, relate to co-workers, deal with the public, and interact with supervisors, and had a fair ability to deal with work stresses and maintain attention and concentration. [The plaintiff] had a fair ability to understand remember and carry out complex and detailed instructions.`

Id. at 183-84.

In Markle the administrative law judge concluded that the plaintiff did not meet the 12.05C Listing. Id. at 185. In order to reach that conclusion, the administrative law judge rejected the plaintiff's full scale IQ score of 70 because it was inconsistent with the plaintiff's daily activities, and he had obtained a general equivalency diploma. Id. at 184. The court of appeals found that the administrative law judge erred in rejecting the IQ score. The court of appeals acknowledged that an administrative law judge may reject scores that are inconsistent with the record, but the record must "provide a basis for the rejection." Id. at 187. The court of appeals concluded that there was no basis for the rejection where the doctor who administered the test "concluded that the scores he reported were valid, as he did not qualify them or find that they were inconsistent with the various positive aspects he noted in [the plaintiff's] appearance, demeanor and conduct." Id. The administrative law judge did not have an "expert opinion of a

11

psychologist or medical person to contradict [the doctor's] IQ finding." Id. The court also noted that "'[a]n ALJ cannot reject IQ scores based on personal observations of the claimant and speculative inferences drawn from the record.'" Id. (quoting Morales, 225 F.3d at 318). The court of appeals recognized that activities such as having a driver's license, work history as a truck driver, limited literacy, and doing laundry were "not inconsistent with qualifying mental retardation." Id. (citing Brown v. Sec'y of HHS, 948 F.2d 268, 270 (6th Cir. 1991)).[2] The court of appeals found the plaintiff met the first two requirements of the 12.05C Listing, but remanded the case for the record to be fully developed with respect to whether the plaintiff met the 12.05C Listing's third requirement that the mental retardation must have been manifested before the age of 22. Id. at 189.

In Morales, the plaintiff was a forty-year-old man with a verbal IQ score of 52, a performance IQ score of 55, and a full scale IQ score of 51. Morales, 225 F.3d at 312, 314. The plaintiff had been plagued by mental health problems and substance abuse his entire life. Id. at 312. The medical diagnoses ranged from a personality disorder to polysubstance dependence. Id. at 312-13. Some evidence in the record suggested that the plaintiff malingered[3] during his cognitive tests. Id. at 313-14. The administrative law judge rejected the plaintiff's IQ scores because "the results reached by [the doctors who reported the IQ scores] were because [the

---

[2] The court of appeals distinguished Clark v. Apfel, 141 F.3d 1253 (8th Cir. 1998) and Popp v. Heckler, 779 F.2d 1497 (11th Cir. 1986). In Clark, IQ scores below 70 were rejected because the plaintiff "worked in the private sector, had a driver's license and was the primary caretaker of her young daughter and had completed ninth grade without special education classes." Markle, 324 F.3d at 187. Popp was distinguished because the plaintiff "had a two-year college degree, was enrolled in a third year of college, and had a history of several skilled jobs including teaching algebra at a private school." Id. This case is distinguished from Clark and Popp for the same reasons discussed in Markle.

[3] "'Malingering' is a medical term defined as the willful, deliberate, and fraudulent feigning or exaggeration of the symptoms of illness or injury." Morales, 225 F.3d at 313 n.3 (citing Dorland's Illustrated Medical Dictionary 982 (2d ed.1994)).

12

plaintiff] was 'manipulative, unmotivated and possibly malingering' and that the IQ scores 'do not comport with [the plaintiff's] appearance and demeanor or with the evidence in the record.'" Id. at 315. The plaintiff was denied benefits. Id. The court of appeals disagreed with the administrative law judge's conclusion and noted the administrative law judge cannot supplant his own lay opinion for that of a medical professional. Id. at 318. The court stated: "An ALJ cannot reject IQ scores based on personal observations of the claimant and speculative inferences drawn from the record." Id. A rejection of an IQ score must be based on objective medical evidence, which was not present in that case. Id.

In the instant case, there is no objective medical evidence in the record to invalidate the results of plaintiff's IQ tests.[4] Objective medical evidence shows that plaintiff had a consistent history of a verbal IQ score below 70. While both Dr. Kalson and Dr. Mrus noted some concerns – such as plaintiff's severe cold – neither doctor characterized the results as invalid. To the contrary, Dr. Kalson found the results "valid and reliable," (R. at 123), and Dr. Mrus found the results "reasonably accurate." (R. at 149.) Even before the 2001 and 2003 tests, plaintiff's verbal IQ score in 1996 was 66. Significantly, the administrative law judge in 2002 found plaintiff's verbal IQ score of 68 was sufficient to meet the 12.05C Listing requirement that there be a valid IQ score of 70 or below. The administrative law judge in 2002 denied benefits only because

---

[4]The R&R incorrectly viewed the opinion of Dr. Dalton, a state agency psychologist, as medical evidence that the IQ test scores were invalid. (R&R at 19.) ("Dr. Dalton, a state agency psychologist, reviewed plaintiff's records and found that, although a medically determinable impairment was present, there was no valid verbal, performance or full scale IQ of 60 through 70 that would satisfy the criteria for mental retardation." (citing R. at 134).) Dr. Dalton did not expressly opine that the IQ scores were invalid. While Dr. Dalton checked a box indicating that the criteria of Listing 12.05 was not met (R. at 134), he relied on the validity of the 2003 IQ scores, including the verbal IQ score, to support his findings. He opined that "[t]he medical evidence establishes a medically determinable impairment of Borderline Intellectual Functioning (69, 81, 73 [the 2003 IQ scores])." (R. at 146.) The record supports the conclusion that, whatever other reasons Dr. Dalton had for checking the box, he viewed the IQ scores of 69, 81 and 73 as valid.

plaintiff lacked an additional impairment. (R. at 30-31.) It was the ALJ who in 2004 rejected plaintiff's scores. (R. at 14.) The ALJ, despite accepting the prior administrative law judge's findings as final and binding, invalidated the 2001 verbal IQ score (which was not invalidated by the administrative law judge in 2002) because plaintiff suffered from a severe cold and he invalidated the 2003 verbal IQ score because the doctor did not adequately discuss plaintiff's daily activities. (R. at 13-14, 17.) The ALJ found that plaintiff's impairments did not limit her daily activities. (R. at 15.) Plaintiff, who lives with her grandparents, engages in activities such as taking care of her daughter, napping, shopping, and doing laundry. (R. at 13, 163.) She does not drive and she did not graduate from high school. (Id.) Plaintiff took special education classes in school. (R. at 110, 158.)[5]

As noted previously, the court of appeals in Markle discussed the kinds of activities which did not invalidate an IQ score. Markle, 324 F.3d at 183, 187. Not only do plaintiff's activities fall below the level discussed in Markle, which the court of appeals in Markle found to be consistent with qualifying medical retardation, but her activities have not significantly changed from the time she received benefits to the present. The ALJ referred to Dr. Kalson's statement that the plaintiff "'had the capability to follow simple instructions and carry out routine tasks" as tending "to show that the [plaintiff] does not function as a retarded person." (R. at 14.) In Markle, the court of appeals found that kind of conclusion improper in the circumstances where the plaintiff had been evaluated and was considered to have a "fair ability to . . . carry out complex and detailed instructions." Markle, 324 F.3d at 184. The ALJ, like the administrative

---

[5]The ALJ suspected that plaintiff did not take special education classes. (R. at 14.)

law judge in Markle, appears to have utilized his opinion rather than the opinions of qualified medical professionals regarding the validity of IQ test scores.

The record does not support the ALJ's finding with respect to the first element of the 12.05C Listing. To the contrary, the substantial evidence of record supports a finding that plaintiff had a valid IQ score below 70.

## 2. Second Requirement: Additional Severe Impairment

The additional impairment requirement of the 12.05C Listing was not discussed in the R&R or the objections. With respect to this requirement, plaintiff argues that because the ALJ in 2004 characterized her depressive disorder as a severe impairment, she satisfies the 12.05C Listing's second requirement. Defendant argues that the ALJ in 2004 did not characterize plaintiff's depressive disorder as severe but instead as "poorly defined." (R. at 15.) Defendant asserts that the ALJ, in criticizing plaintiff's alleged depressive disorder, focused on the inconsistencies in her symptoms and in her treatment. (R. at 14-15.) There are two flaws in defendant's arguments.

First, while defendant argued that the additional severe impairment must be medically determinable by acceptable medical evidence, the court finds that the evidence is consistent with plaintiff's position and the ALJ's findings. Plaintiff has a history of depression, including antidepressants, a suicide attempt, and a self-referral to a behavioral health clinic. (R. at 14-16). Second, the ALJ explicitly found that both plaintiff's BIF and depressive disorder are severe impairments. (R. at 17.) If the administrative law judge finds an additional impairment to be severe, the second element is satisfied.

> [T]he Commissioner in new regulations on the evaluation of mental disorders addressed the second prong of § 12.05C, stating that '[w]e always have intended the phrase to mean that the other impairment is a "severe" impairment as defined in §§ 404.1520(c) and 416.920(c).'

Markle, 324 F.3d at 188 (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50772 (August 21, 2000)). Consistent with the decision in Markle, this court must conclude that the ALJ's finding of a severe impairment relating to a depressive disorder meets the second element of the 12.05C Listing.

### 3. Third Requirement: Onset of Mental Retardation before Age 22

There is no question that plaintiff's onset of her mental impairment was before age 22. She was found disabled in 1996 and qualified for CSSI benefits by reason of mental retardation and a conduct disorder. Under those circumstances the record reflects that plaintiff satisfied the third requirement of the 12.05C Listing.

*Conclusion*

In light of all the evidence in the record, the court concludes that plaintiff meets the 12.95C Listing requirements and accordingly plaintiff is per se disabled and entitled to disability benefits. 20 C.F.R. § 416.920(d) ("If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, we will find you disabled. . . ."). See Markle, 324 F.3d at 185 ("Had the ALJ found that Markle's impairments met the severity listing under [the 12.05C Listing], the Step 4 and Step 5 inquiry would have been unnecessary and irrelevant."). The administrative record has been fully developed and the substantial evidence of record, considered as a whole, "indicates that [the plaintiff] is disabled

and entitled to benefits." Podedworny, 745 F.2d at 222.  Under those circumstances a remand for further administrative proceedings is not warranted and the decision of the ALJ must be reversed. See Morales, 225 F.3d at 320.  Summary judgment will be entered in favor of plaintiff (Docket No. 8) and defendant's motion for summary judgment will be denied (Docket No 10).  The decision of the ALJ is reversed and this case is remanded for the calculation and award of benefits to which plaintiff is entitled from April 25, 2003 (protective filing date).

                                          By the court,

                                          /s/ JOY FLOWERS CONTI
                                          Joy Flowers Conti
                                          United States District Judge

Dated:   July 31, 2008

cc: Counsel of record